UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF KERN, et al.,<br><br>　　　　Defendants. | Case No.: 1:15-cv-01641 DAD JLT<br><br>ORDER AFTER MID-DISCOVERY STATUS CONFERENCE |

On June 21, 2016, the Court held the mid-discovery status conference. In advance of the hearing, the parties filed their joint status conference statement and, after the Court requested additional information, the parties lodged additional briefs related to discovery disputes they are facing. (Docs. 29, 32, 33, 34) Counsel raised concerns related to the acceptable topics for the plaintiff's deposition, whether Mr. Anderson may attend the deposition and whether the deposition may be videotaped. Also, counsel indicated concerns over whether Mr. Anderson's deposition should go forward until he is assured he will not be subject to criminal charges. Finally, the defendants seek an amendment to the case schedule.

After significant discussion of the topics, the Court concludes that limits should be placed on the deposition of the plaintiff, that, with proper safeguards, Mr. Anderson may attend the deposition and that it may be videotaped. Mr. Anderson will submit to deposition, but it remains uncertain whether he will assert his rights under the Fifth Amendment. Finally, the Court does not find that there

has been a sufficient showing of diligence in completing discovery or that there is sufficient need to modify the case schedule at this time.

### I. Plaintiff's Deposition

#### A. Scheduling the deposition

Though County has noticed the plaintiff's deposition, she has refused to appear on the noticed date and has not provided alternative dates. Thus, at the conference the Court ordered the plaintiff's attorney to provide dates for her deposition, no later than June 24, 2016, to occur as soon as possible but no later than the end of July 2016. Counsel will work together to schedule this deposition near in time to that of Mr. Anderson.

#### B. Videotaping of the Deposition

Except for concerns that the plaintiff will be made nervous by the videotaping, the plaintiff offered no legal basis upon which the Court can conclude that this method of recording is in any way harmful to her or the process. Moreover, the plaintiff feels no compunction about videotaping depositions she will take. For example, she has noticed the deposition of Mr. Anderson and indicates in the notice that she intends to preserve his testimony via videotaping. Thus, the Court concludes that the defendants are within their rights to videotape the plaintiff's deposition as long as they have properly noticed it under Fed.R.Civ.P. 30(b)(3)(A).

#### C. Attendance at the Deposition by Mr. Anderson

Mr. Anderson has expressed that he intends to attend the deposition of the plaintiff. Mr. Anderson's attorney reported that it is important for Mr. Anderson to be present so that he can hear for himself exactly what the plaintiff is saying and so he can assist his attorney in conducting a thorough examination.[1] These purposes are sufficient justification—to the extent that any is needed—to allow Mr. Anderson to be present.

---

[1] The Court recognizes that Mr. Anderson and his counsel intend, by Mr. Anderson's presence at the deposition, *only* to obtain truthful testimony from the Plaintiff and do not intend any intimidation. However, given the position of power and authority that Mr. Anderson held over the plaintiff, plaintiff's argument that she would be intimidated nonetheless is reasonably supported.
On the other hand, absent the order the Court is issuing here, the Court is concerned that the plaintiff may later claim—whether truthfully or not—that Mr. Anderson's presence caused her to provide inaccurate testimony. No party's interest is served if there is an appearance that the testimony plaintiff gives is not reliable.

However, the nature of the claims, the fact that Mr. Anderson held custodial authority over the plaintiff and the fact the plaintiff was a child at the time of the events, raises competing concerns. In Maryland v. Craig, 497 U.S. 836, 851 (1990), the Court found the Confrontation Clause was not violated by requiring the criminal defendant to be shielded from view from the alleged child-victim while the child testified. In Maryland, the Court noted the myriad ways that states act to protect child-victims from the further emotional trauma of facing the alleged perpetrator while testifying. The Court observed, "We likewise conclude today that a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court. That a significant majority of States have enacted statutes to protect child witnesses from the trauma of giving testimony in child abuse cases attests to the widespread belief in the importance of such a public policy." Id. at 853. In this civil case, of course, Mr. Anderson's rights are not nearly so weighty.

Thus, though Mr. Anderson is fully entitled to attend the deposition, the plaintiff should not be required to have face-to-face contact with him while she testifies. He will sit behind a screen in the same room as the plaintiff while she testifies; he will sit in a nearby room and have the video and/or audio recording of the deposition broadcast to him; or counsel will develop another procedure satisfactory to them that achieves the goals of this order.[2] Mr. Anderson's attorney is entitled to take a reasonable number of breaks to consult with Mr. Anderson as the deposition proceeds.

**D.    Scope of the plaintiff's deposition**

The parties agree that inquiry into the incidents that give rise to the complaint for damages and the events leading up to the acts complained of and those that occurred after—at least to the extent that it sheds light on what actually occurred between the plaintiff and Mr. Anderson—is proper matter for the deposition. However, the parties disagree whether the defendants should be able to inquire into plaintiff's "sexual history" or into her "medical history, criminal history, or other conduct prior to the incident."

As to the disputed topics, Defendants indicated that they wished to better understand the

---

[2] Counsel are advised to make efforts to avoid having the plaintiff and Mr. Anderson interact at the deposition for the reasons set forth above in footnote 1.

3

damages claim but the Court presumes also they wish to test the plaintiff's truthfulness; they are entitled to do both. However, how this occurs and the extent to which they may invade the plaintiff's privacy must be carefully considered by all. The Court is confident that neither defense attorney would intentionally wish to cause the plaintiff unnecessary emotional upset but the Court is equally confident that absent proper parameters, this will occur.

### i. The plaintiff's sexual history

Federal Rules of Evidence Rule 412 controls the evidence that may be admitted in civil cases involving alleged sexual assault. Evidence of the victim's other sexual behavior or sexual predisposition cannot be admitted unless the probative value "substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." [3] Id. Notably, the Advisory Committee Notes read,

> The reason for extending Rule 412 to civil cases is equally obvious. The need to protect alleged victims against invasions of privacy, potential embarrassment, and unwarranted sexual stereotyping, and the wish to encourage victims to come forward when they have been sexually molested do not disappear because the context has shifted from a criminal prosecution to a claim for damages or injunctive relief. There is a strong social policy in not only punishing those who engage in sexual misconduct, but in also providing relief to the victim. Thus, Rule 412 applies in any civil case in which a person claims to be the victim of sexual misconduct, such as actions for sexual battery or sexual harassment.

Id. The Notes continue,

> In order not to undermine the rationale of Rule 412, however, courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery.

Id.

In Barsamian v. City of Kingsburg, 2008 WL 2168996, at *1 (E.D. Cal. May 22, 2008), the plaintiff claimed she had been sexually assaulted by a police officer. As here, the defendants sought to ask questions at depositions about the plaintiff's "sexual history." Id. at 4. Notably, the plaintiff testified that since the assault she could no longer tolerate any "human contact" and no longer liked

---

[3] Courts generally agree that the purposes of Fed.R.Evid. 412 must be honored in discovery as well as when considering the admissibility of sexual history evidence. Doe v. City of San Diego, 2013 WL 3989193, at *4 (collecting cases).

anyone to touch her, that the incident had caused an "impact on her 'interpersonal relationships" and that she had discussed her inability to tolerate any touching with her health care providers. Id.

The Court agreed that "discovery regarding Plaintiff's sexual history appears permissible under Fed.R.Civ.P. 26, subject to certain limitations to protect Plaintiff against unwarranted inquiries and to ensure confidentiality." Id. at 5. However, the Court noted that the plaintiff was scheduled to undergo a psychiatric IME at which she would discuss her sexual history. Id. Thus, the Court precluded further inquiry at depositions related to plaintiff's sexual history but allowed the defendants to renew their motion, if necessary, after the IME was completed. Id.

The Court will proceed similarly here. At this time, much of the justification for the invasion into Plaintiff's "sexual history" is based upon speculation as to the content of plaintiff's damage claim. For example, County's lawyer suggested that she should be allowed to ask questions about the plaintiff's consensual sexual history before the subject incident because, counsel speculated, the plaintiff may assert that the alleged sexual assault was "her first time" which could be a basis for greater damages. This type of fishing expedition is not permitted.

In weighing the need to investigate certain topics against the risk of harm to the plaintiff, the Court concludes certain areas of inquiry are permitted and certain areas are not. For example, the defendants are entitled to ask the plaintiff questions about other incidents in which the plaintiff has claimed that she was sexually assaulted. If she denies that this has occurred and the defendants have no evidence to the contrary, no further questions on this topic will be permitted.

The defendants are not permitted to inquire *generally* into the plaintiff's romantic relationships no matter when they occurred. However, they are entitled to ask the plaintiff to describe the emotional damage she claims she suffered and she must fully answer. They are permitted to ask questions related to romantic relationships she had before the incident and has had after, *but only if* the plaintiff *first* testifies that she has been changed by the alleged sexual assault in a way that means she is no longer emotionally able to tolerate physical acts that are sexual, romantic or affectionate in nature. If this occurs, the defendants are entitled to determine *only* in what way she has been changed and to confirm she engaged in these physical acts before the incident and cannot do so now.

On the other hand, the defendants are entitled to ask questions on any topic related to her

5

"sexual history" raised by the plaintiff herself and to inquire into anything the plaintiff claims as grounds for her emotional injury. For example, if the plaintiff testifies, as defense counsel speculates, that the alleged sexual assault was particularly emotionally damaging because of a past experience or lack of experience—sexual or otherwise—then the defendants would be entitled to explore this topic.

### ii. The plaintiff's "medical" history

The plaintiff argues that she should not be asked questions related to her medical history. First, the Court notes that the complaint claims that she has "been injured in the mind and body" as a result of the claimed acts of sexual assault. (Doc. 1 at 5, 6, 7, 8, 10, 11, 12, 14, 15, 16, 17) Thus, questions related to any physical injuries she claims she suffered are clearly appropriate. Moreover, the defendants claim that chronic medical conditions or other physical ailments from which the plaintiff suffers may be alternate explanations for the emotional damages claimed in this litigation. The Court agrees. Thus, the defendants may ask questions related to such medical conditions and about whatever bodily injuries she claims she suffered in the complained of events; they are not permitted to inquire into the plaintiff's medical history generally.

Second, plaintiff pleads a claim for intentional infliction of emotional distress. (Doc. 1 at 12) She asserts that she suffered "extreme and severe mental anguish and pain" as a result of the defendants' conduct. Id. In addition, at the hearing, the plaintiff's counsel admitted that, at least as of now, the plaintiff intends to introduce evidence from a mental health professional to support these claims. This is more than a "garden variety" claim of emotional injury and, thus, the plaintiff has placed her mental health at issue. E.E.O.C. v. California Psychiatric Transitions, 258 F.R.D. 391, 399 (E.D. Cal. 2009)["[T]he psychotherapist-patient privilege is waived whenever the patient places his mental condition at issue"]. As a result, the defendants are entitled to ask questions related to the emotional injury the plaintiff claims, how it has manifested itself and whether she suffered any such injury or suffered from a mental health condition before the incidents which give rise to the complaint.

### iii. The plaintiff's criminal history

The defendants seek to ask questions about the plaintiff's criminal history. Under Fed. R. Evid. 609, a party may be impeached with felony convictions or by misdemeanor convictions if an element of the crime relates to dishonesty or a false statement. Convictions over ten years old are generally not

admissible. Id.  The rules are slightly different when juvenile adjudications are at issue.  Id.  Evidence related to juvenile adjudications is admissible *only* if they are offered in a criminal case.  Thus, the defendants are entitled to ask the plaintiff about any criminal convictions.  On the other hand, the Court concludes that questions related to the juvenile adjudication for which the plaintiff was confined at juvenile hall at the time of the alleged incidents, may lead to admissible evidence.  Thus, defendants may ask questions *only* related as to this particular juvenile adjudication but none other.

**II.     Request to amend the case schedule**

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3).  In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." Id.  Once entered by a court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d).  Scheduling orders are intended to alleviate case management problems. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992).  As such, a scheduling order is "the heart of case management."  Koplove v. Ford Motor Co., 795 F.2d 15, 18 (3rd Cir. 1986).

A scheduling order is "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Johnson, 975 F.2d at 610 (quoting Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Maine 1985)).  Good cause must be shown for modification of the scheduling order.  Fed. R. Civ. P. 16(b)(4).  The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment.  The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension.  Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.  Although the existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

Johnson, 975 F.2d at 609 (internal quotation marks and citations omitted).  Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999).

Counsel have made an inadequate showing to support their conclusion they have acted diligently.  For example, it appears that counsel did not propound written discovery until mid or late

7

April and, since the time the plaintiff responded to it, no further discovery has occurred. Also, counsel have not explained why they cannot complete the discovery within the deadlines[4] set by the Court. There seems little likelihood that the records produced by the juvenile court—assuming they are produced—will impact the discovery to be completed in light of the fact that these records have already been produced by the Probation Department and reviewed by counsel.[5] Moreover, the depositions of the plaintiff and Mr. Anderson will be completed by the end of July.

Despite this, the Court does not discount that further discovery may be needed after the depositions of the plaintiff and Mr. Anderson are completed. However, until this concern coalesces, it does not appear there is any current need to amend the case schedule. For this reason and because counsel has not made a sufficient showing to justify amendment of the case schedule *at this time*, (Johnson, 975 F.2d at 609), the request to amend the case schedule is **DENIED WITHOUT PREJUDICE**.

### ORDER

Based upon the foregoing, the Court **ORDERS**:

1. No later than **June 24, 2016**, the plaintiff SHALL notify opposing counsel of the dates she and her counsel are available between now and the end of July, for deposition;

2. The deposition of Mr. Anderson will occur on a day near in time to the deposition of the plaintiff before the end of July and will not occur as currently noticed. Counsel SHALL cooperate in selecting a convenient date for this deposition;

3. At the plaintiff's deposition, the guidance set forth herein SHALL be observed. However, this does not preclude counsel from making a record of the question he/she would have asked and does not preclude the plaintiff from answering the additional questions if she chooses. The Court will make itself available to take calls from the deposition, if needed, to resolve disputes on the spot;

4. The plaintiff's deposition may be videotaped;

5. Mr. Anderson may attend the plaintiff's deposition as long as he complies with the

---

[4] These deadlines, notably, were proposed by counsel. Thus, the Court is unclear why counsel suggested dates that were unworkable for them.
[5] Counsel has not explained why they waited until late June to file the Welfare and Institutions code § 827 petition.

8

1 guidelines set forth above;

2     6.    The request to amend the case schedule is **DENIED WITHOUT PREJUDICE**.

4 IT IS SO ORDERED.

5     Dated: **June 23, 2016**          **/s/ Jennifer L. Thurston**
6                                           UNITED STATES MAGISTRATE JUDGE