# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>  v.<br><br>COUNTY OF KERN, et al.,<br><br>    Defendants. | Case No.: 1:15-cv-01641 - JLT<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY ADJUDICATION<br><br>TO BE FILED UNDER SEAL<br><br>(Doc. 60) |

   The plaintiff claims that while she was a minor and housed at Juvenile Hall, defendant ████, a Kern County Probation Juvenile Correctional Officer, sexually assaulted her on several occasions. ████████████████████████████████████████ ████████████████████ had committed the wrongful acts. ████████████ ██████████████████████████████████. The Assistant Kern County Probation Officer provided ██████ a Skelly[1] notice. However, the Skelly hearing has not yet occurred and, consequently, the Chief Probation Officer has not finally determined whether ████████ has committed the wrongful acts or, if he did, the punishment that would be imposed.

---

[1] According to <u>Skelly v. State Personnel Bd.</u>, 15 Cal. 3d 194, 206 (1975), when a public employee faces a potential deprivation of his job—a vested property interest—he is entitled to due process which includes notice of the proposed discipline and the reasons for the proposed discipline, a copy of the charges and the materials upon which the proposed action is based and the right to respond either orally or in writing.  Generally, the <u>Skelly</u> hearing is a fairly informal meeting and not a full evidentiary hearing, though the employee may be represented by counsel. <u>Id</u>. at  215.

The plaintiff filed this motion seeking a determination that ███████ was acting within the course and scope of his employment at the time of the events and, based upon the conclusions of ███ ██████████████████, that ████████ committed the alleged wrongful acts. Because the Court finds there is no genuine dispute of material fact that ████████ *only* acted within the course and scope of his employment during his contacts with the plaintiff and because there is no evidence the County of Kern has admitted that ████████ committed the wrongful acts, the motion for summary adjudication is **GRANTED in PART** and **DENIED in PART**.

## I.    Legal Standards for Summary Adjudication

The purpose of summary adjudication "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. See Fed. R. Civ. P. 56 (a), (c); Mora v. Chem-Tronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary adjudication should only be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.*, 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Wool v. Tandem Computers, Inc., 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary adjudication is appropriate by

2

"informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); Matsuhita, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsuhita, 475 U.S. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. Id. at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. Orr, 285 F.3d at 772; Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

## II.    Statement of Facts[2]

From December 2014 through February 2015, ███████ ████████ worked for the Kern County

---

[2] Though the County of Kern indicates that there are disputes of fact related to whether ██████ was acting within the course and scope of his employment, the Court does not find a genuine dispute of material fact that would preclude the determination made here.

3

Probation department as a Juvenile Correctional Officer at the Juvenile Hall facility in Bakersfield. (UMF 1; Doc. 59-1 at 26) During that time, the plaintiff was a 17-year-old ward of the court and was housed at the female facility known as "300-A" at Juvenile Hall. ███████ was assigned to supervise the "300-A" facility and also the coed facility known as "300-B." (UMF 1, 6) His duties as a JCO III included oversight of paperwork, handling grievances, supervising staff and wards and first line discipline of the wards. (UMF 5) Indeed, if ███████ "gave a ward a command and it was disobeyed, the ward could be subject to discipline at Juvenile Hall." (UMF 3)

███████ frequently handled maintenance work in the housing units and his supervisor permitted these efforts. (P's Fact 4) On occasion, ███████ selected the plaintiff for work "details" that ███████ supervised. (P's Fact 6) Using the wards to do work details was consistent with the department's policies (Doc. 59-1 at 16-17), and he had the discretion to choose which wards would work with him. (UMF 4) Notably, the Probation Department had in place policies that prohibited sexual conducted with the wards (Doc. 59-1 at 42-44) and, as admitted by the County at the hearing, policies that precluded officers from being unsupervised with the minors in their rooms, except for limited situations (Doc. 74-2 at 40-42) and required checks of the minors in their rooms every 10 minutes. Again, the County admitted at the hearing that one of the many purposes of these policies was to prevent sexual assault on the wards.

During each of the interactions between ███████ and Plaintiff, "he was on duty and in uniform" (UMF 2) and all of the contacts occurred at the Juvenile Hall facility. When ███████ took the plaintiff to the various areas of the grounds where the work detail was to occur, he did so according to his authority as a Juvenile Correctional Officer. (P's Fact 14) ███████ admitted the legal conclusion, without objection, that every contact he had with the plaintiff occurred within the course and scope of his responsibilities of his job. (Doc. 59-1 at 30) The plaintiff alleges that while assigned to work details and on other occasions while she was housed at Juvenile Hall, ███████ sexually assaulted her. (Doc. 1 at 4)

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

[REDACTED] was placed on paid administrative leave, but has not yet had his <u>Skelly</u> hearing.  (Doc. 68 at 4)  If he is dissatisfied with the outcome on the <u>Skelly</u> hearing, he may appeal the determination to the Civil Service Commission.  <u>Id</u>. at 3.

**III.     Discussion and Analysis**

      **A.     Scope of Employment**

California law imposes liability upon public entities for "injur[ies] proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would have given rise to a cause of action against that employee or his personal representative."  Cal. Gov't Code § 815.2; <u>see also</u> <u>San Mateo Union High Sch. Dist. v. County of San Mateo</u>, 213 Cal. App. 4th 418, 432-33 (2013) ("In addition to limited statutory liability for their own conduct and legal obligations, public entities may incur liability, based on *respondeat superior* principles, for the misconduct of their employees that occurred in the scope of their employment").

For an employee to be determined to have been acting within the course and scope of his employment at the time he committed the wrongful acts, "[t]hat the employment brought tortfeasor and victim together in time and place is not enough." <u>Lisa M. v. Henry Mayo Newhall Memorial Hospital</u>, 12 Cal.4th 291, 298-299 (1995).  Rather, the wrongful acts must be an "outgrowth of the employment" and the tort must be reasonably foreseeable given the employee's duties. <u>Id</u>.  "The employment, in other words, must be such as predictably to create the risk employees will commit intentional torts of

the type for which liability is sought." Id.

At trial, Plaintiff has the burden to establish "that the employee's tortious conduct was committed within the scope of employment." Mary M. v. City of Los Angeles, 54 Cal.3d 202, 209 (1991). "[T]the determination whether an employee has acted within the scope of employment presents a question of fact." Mary M., 54 Cal. 3d at 213. However, it becomes a question of law "when the facts are undisputed and no conflicting inferences are possible." Id. (quoting Perez v. Van Groningen & Sons, Inc., 41 Cal.3d 962, 968 (1986)).

In Mary M., the Court examined whether an employer could be held liable under the doctrine of respondeat superior where a police officer raped a woman he detained for erratic driving. Id., 54 Cal. 3d at 207. The officer "was on duty as a field supervisor; he was assigned to supervise and train police officers patrolling the streets." Id. In addition, the officer "was in uniform, wore a badge and a gun, and was driving a marked black-and-white police car. Id. The court determined that liability could be imposed "on the employer of a police officer who, while on duty, commits a sexual assault by misusing his official authority," explaining:

> [S]ociety has granted police officers great power and control over criminal suspects. Officers may detain such persons at gunpoint, place them in handcuffs, remove them from their residences, order them into police cars and, in some circumstances, may even use deadly force. The law permits police officers to ensure their own safety by frisking persons they have detained, thereby subjecting detainees to a form of nonconsensual touching ordinarily deemed highly offensive in our society. (Terry v. Ohio (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].) In view of the considerable power and authority that police officers possess, it is neither startling nor unexpected that on occasion an officer will misuse that authority by engaging in assaultive conduct. The precise circumstances of the assault need not be anticipated, so long as the risk is one that is reasonably foreseeable.

Mary M., 54 Cal. 3d at 217-218. The court determined that "the proper inquiry is not whether the wrongful act itself was authorized but whether it was committed in the course of a series of acts of the agent which were authorized by the principal." Id. at 219 (internal quotation marks, citation omitted). The court explained that it was not holding "as a matter of law, the public employer is vicariously liable whenever an on-duty officer commits a sexual assault," but rather finding liability could be imposed where "the plaintiff presented that would support the conclusion that the rape arose from misuse of official authority." Id. at 221.

Similarly, in White v. County of Orange, 166 Cal.App.3d 566, 570-571 (Ct. App. 1985), the

6

court determined that an officer who stopped a motorist and threatened to rape and murder her was acting within the course and scope of his employment. The court observed, "whether a tort is committed during the course of employment turns on 'whether or not: (1) the act performed was either required or 'incident to his duties' [citation] or (2) the employee's conduct could be reasonably foreseen by the employer in any event [citations].'" Id., quoting Alma W. v. Oakland Unified School Dist., 123 Cal.App.3d 133, 139 (Ct. App. 1981). Given this, the White court held, "the police officer carries the authority of the law with him into the community. The officer is supplied with a conspicuous automobile, a badge and a gun to ensure immediate compliance with his directions. The officer's method of dealing with this authority is certainly incidental to his duties; indeed, it is an integral part of them. Here . . . the wrongful acts flowed from the very exercise of this authority." Id. at 571.

The court continued,

> White alleges she stopped solely because she was ordered to do so by a deputy sheriff. In other words, she relied on the officer's apparent authority. Had Loudermilk not been a deputy sheriff, in uniform, in a marked patrol vehicle using flashing red lights, White would not have stopped at his direction and the events that followed would not have occurred. Because the County placed Loudermilk in this position of authority, it will be liable for his actions should White prove her allegations at trial.
> The use of authority is incidental to the duties of a police officer. The County enjoys tremendous benefits from the public's respect for that authority. Therefore, it must suffer the consequences when the authority is abused.

White at 571–572.

On the other hand, in Doe 1 v. City of Murrieta, 102 Cal.App.4th 899, 903 (Ct. App. 2002), the court refused to find that the officer was acting within the course and scope of his duties when he sexually molested two minors involved in the police department's Explorer Program. The program was designed to interest youngsters in a career in law enforcement. Id. at 904. During the program, the two minors became infatuated with an officer, Boyd. Id. at 905. They sought out opportunities to do one-on-one "ride-alongs" with Boyd. Id. During some of these ride-alongs, Boyd engaged in "consensual[3]" sex acts with the girls. Id.

In the subsequent civil action, the Murrieta court was obligated to determine whether Boyd was acting within the course and scope of his employment during the unlawful sexual acts. City of

---

[3] The Court uses this term because it was used in the opinion. However, of course, these minors lacked the capacity to consent.

Murrieta, at 906-910.  In refusing to find Boyd acted within the course and scope of his job duties, the court held, "Although Boyd was acting as an on-duty police officer during the majority of his sexual misconduct, his relationship with plaintiffs was that of a supervisor or coworker rather than that of a police officer exercising law enforcement authority over a member of the general public. And Boyd's sexual acts with plaintiffs were undertaken solely for Boyd's and plaintiffs' personal gratification and had no purpose connected to their employment." Id. at 910.  The court continued, "The connection between the law enforcement authority conferred on Boyd to carry out his law enforcement duties is simply too attenuated to deem his sexual misconduct as falling within the range of risks allocable to his employer." Id. at 910.  In short, the court found it significant that the sex acts occurred despite that Boyd did not exercise his lawful authority to force the minors to submit—they submitted, apparently, due to their misguided infatuation with Boyd.

Similarly, in San Diego Police Officers Assn. v. City of San Diego, 29 Cal.App.4th 1736, 1739 (Ct. App. 1994), a police officer, Goudarzi, became sexually involved with a confidential informant. The two had sexual intercourse on several occasions at the officer's home while he was off-duty. Id. The informant sued and asserted that the sexual conduct occurred only after "a period of intimidation and coercion." Id.

In the civil action, the officer requested the City defend him in the action and the City refused. San Diego, at 1739.  After trial, the jury found in favor of the officer but was not required to determine whether the officer's action was taken within the course and scope of his job duties. Id. Goudarzi sued the City for the cost of defending the action.  Id. at 1740.  At trial, Goudarzi testified, "all his sexual encounters with Loche were strictly personal business and had nothing to do with his employment with the City. Every time Goudarzi had sex with Loche it was at Goudarzi's condominium while off duty. Goudarzi never threatened Loche." Id. at 1741.  As a result, the court granted the City's motion for nonsuit. Id.

On appeal, the Court held,

[W]hen an employee substantially deviates from his duties for personal purposes, the employee is not acting within the scope of employment. [Citation] **Whether an employee substantially deviated, and, therefore, acted outside the scope of employment, requires an inquiry into whether the wrongful act was committed in the course of a series of acts of the agent which were authorized by the principal,**

8

**not whether the act itself was authorized. The employee's conduct must be viewed as a whole.**

[¶]

Goudarzi was not in the course of a series of authorized or official acts on the night in question, and we have no evidence of any misuse of official authority. Goudarzi was on vacation, at home, having sex with Loche on October 13, 1994. The only connections between the facts and Goudarzi's employment were that Loche was an informal informant and Goudarzi was a vacationing police officer subject to being called to duty. These circumstances do not bring their sex acts within the scope of Goudarzi's employment. We have no evidence Goudarzi misused his official authority to coerce Loche into their sexual relationship. Goudarzi, the only witness, testified he never threatened Loche and that their sex had nothing whatsoever to do with his employment as a police officer.

Id. at 1743-1744, emphasis added.

The Ninth Circuit Court of Appeals had occasion to consider a similar issue in Lu v. Powell, 621 F.3d 944, 949 (9th Cir. 2010). In Lu, the Court made easy work of determining that an Asylum Officer, Powell, was acting within the course and scope of his employment when he sexually assaulted two asylum seekers and sought bribes for a favorable determination of their applications. First, the Court observed, "Although 'somewhat surprising on first encounter,' the principle is 'well established' that 'an employee's willful, malicious and even criminal torts may fall within the scope of his or her employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts.'" Quoting Lisa M. at 269-267. However, "court looks to the foreseeability of the employee's conduct, whether it be authorized or unauthorized, tortious or criminal, because the California rule "reflects the central justification for respondeat superior [liability]: that losses fairly attributable to an enterprise—those which foreseeably result from the conduct of the enterprise—should be allocated to the enterprise as a cost of doing business." Id. at 948 (quoting Farmers Ins. Group v. County of Santa Clara, 11 Cal.4th 992, 1004 (1995).

Second, the Court noted that the particular vulnerability of the victim does not impact a court's analysis. Xue Lu, at 949. Rather, the court is required to consider "the extent to which the tort of the employee is incident to his employment." Id. Thus, the Court held, Powell was part of a process in which he was expected to participate in a lawful way, reviewing the documentation of the asylum applicant, interviewing her, and assessing the credibility of her claims . . . Powell abused his powers for his own benefit. In doing so, he acted within the scope of his employment as defined by California. To

9

compensate his victims, spread the loss, and stimulate the government to greater vigilance in controlling aberrant behavior, California law makes the United States bear the cost of Powell's conduct, unauthorized but incidental to the asylum system." Id.

The County of Kern argues that the determination of whether ███████ acted within the course and scope of his duties is a question for the jury.  (Doc. 65 at 6)  However, in its papers, the County offers no description of the facts it believes must be resolved by the jury before the determination may be made.  See Mary M. at 213 ["Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when 'the facts are undisputed and no conflicting inferences are possible.'"] (Internal citation omitted); Lisa M. at 299 ["Neither plaintiff nor Hospital has pointed to factual disputes that would prevent us in this case from deciding the applicability of respondeat superior as a matter of law.'].

At the hearing, counsel for the County clarified that the fact to be determined by the jury is whether ███████ committed the wrongful acts. Toward this end, the County of Kern takes the position that Perez demonstrates that whether ███████ committed the wrongful acts is a material fact that must be determined before the Court may determine whether ███████ acted within the course and scope of his employment for purposes of this motion; the Court disagrees.  Perez notes that the plaintiff bears the burden of establishing at trial whether the wrongful conduct occurred (Perez, at 968) but does not suggest that in every case the determination of whether the wrongful conduct occurred must be made before the Court may address course and scope issues.

Moreover, there are no material factual disputes that the interactions between ███████ and the plaintiff were condoned by the County of Kern and, in fact, that ███████ was obligated to have these interactions as a part of his job. The *only* dispute is whether during these employer-condoned interactions that ███████ sexually molested the plaintiff.  In fact, the County of Kern admitted at the hearing that if ███████ *did not* commit the wrongful acts, he was acting within the course and scope of his employment during all of his interactions with the plaintiff.  If he *did* commit the acts, however, the County of Kern contends that there is a question of fact as to whether he committed them within the course and scope of his employment.  The Court finds the unique facts of this case make it one where the course and scope issues can be determined without first determining whether the wrongful acts

occurred.

As pointed out by the parties, <u>Mary M</u>. is an exception to the general rule that an employer will not be held liable for sexual misconduct of an employee. However, as a sworn peace officer, the acts attributed to ████ by the plaintiff bring the case squarely within the rationale of <u>Mary M.</u>'s exception. Though ████ denies any wrongful sexual conduct occurred, there is no dispute that his only contacts with the plaintiff occurred while she was housed at Juvenile Hall, while ████ was a ████ and on duty, while he had authority to require the plaintiff to submit to his orders, while her failure to submit to his orders subjected her to discipline and while he wore the uniform and all of indicia of his authority vested in him by the Kern County Probation Department. Indeed, ████ was not a mere Juvenile Correctional Officer but was instead, ████████. Also, unlike in <u>City of Murrieta</u> and <u>San Diego Police Officers Assn</u>., in every interaction between ████ and the plaintiff, ████ used his law enforcement authority over the plaintiff. Thus, if the wrongful acts occurred, it was because ████ committed them within "the course of a series of acts" authorized by his employer despite that the the wrongful acts were not authorized by his employer. <u>San Diego Police Officers Assn</u>. at 1743-1744.[4] Thus, the Court **GRANTS** the motion on this issue.

**B.     Whether the County of Kern is bound by the determination of the ████**
████████

The plaintiff argues that the Court should determine in her favor that ████████ committed the acts of misconduct alleged in her complaint as to the County of Kern—but does not seek adjudication on this topic as to ████. (Doc. 59 at 20) The gist of the plaintiff's argument is that at the deposition of the County of Kern, the representatives admitted that the County of Kern had

---

[4] The Court in <u>McMillan v. Department of Corrections</u>, 2016 WL 4059230, at *4 (N.D. Fla. July 8, 2016), report and recommendation adopted, 2016 WL 4059679 (N.D. Fla. July 27, 2016), came to a similar result. In <u>McMillan</u>, the plaintiff claimed the defendant acted consistently with the culture created by the prison officials which tolerated and encouraged inmate abuse. Thus, after the officer sexually assaulted the plaintiff, he sued the department under a theory of vicarious liability. In denying the department judgment the court held,

A reasonable juror could conclude that Hay was acting within the course and scope of his employment at the time the assault against Plaintiff occurred. Hay was clearly engaged in supervisory duties over Plaintiff and the other inmates in A-Dorm. Hay exercised his authority over Plaintiff to order him to the laundry room under the pretext of requiring assistance with the laundry. The assault occurred within the time and space of Hay's employment. Hay arguably took advantage of the fact that he was the only officer left on duty in A-Dorm to isolate and assault Plaintiff in an area that was known to provide an unmonitored space for misconduct.

<u>Id</u>. at *8.

determined that ████ committed the wrongful acts of which she complains. (Doc. 59 at 20-22)

Pursuant to the Federal Rules of Civil Procedure, "[a] party may, by oral questions, depose any person, including a party, without leave of court." Fed.R.Civ.P. 30(a)(1). In addition, parties may take the deposition of an entity, as provided in Rule 30(b)(6):

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed.R.Civ.P. 30(b)(6). After receiving a deposition notice pursuant to Rule 30(b)(6), the entity has an obligation "to provide a witness who can answer questions regarding the subject matter listed in the notice." Detoy v. City & County of San Francisco, 196 F.R.D. 362, 366 (N.D.Cal.2000) (quoting King v. Pratt & Whitney, a Div. of United Technologies Corp., 161 F.R.D. 475, 476 (S.D.Fla.1995)).

The designee is not required to have personal knowledge of the topics at issue but must be sufficiently prepared on the topics such to provide knowledgeable and binding testimony. United States v. Taylor, 166 F.R.D. 356, 361, aff'd, 166 F.R.D. 367 (M.D.N.C.1996); Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc., 251 F.R.D. 534, 539 (D.Nev.2008). The designee's role is to establish the entity's interpretation of events and documents. United States v. J.M. Taylor, 166 F.R.D. 356, 361 (M.D.N.C.1996).

The impact on the trial stemming from 30(b)(6) testimony is no less than that imposed on an individual. Notably, Federal Rules of Civil Procedure Rule 32(a)(3) allows a party to use the deposition testimony of the entity just as the party may use any other deposition transcript. Courts, however, are divided as to whether the testimony of the entity's designee should have greater effect that testimony by an individual. This divide was considered recently by this Court in Munoz v. Giumarra Vineyards Corp., 2015 WL 5350563, at *4 (E.D. Cal. Sept. 11, 2015). The Court held,

> There is a marked divide in the caselaw. Some courts suggest that an agency is bound by the testimony of its Rule 30(b)(6) designee. Other courts hold that 'testimony given at a Rule 30(b) (6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes,' and that such testimony does not 'bind' the designating entity 'in the sense of

[a] judicial admission.' This treats the testimony as that of any witness, making it subject to correction and/or impeachment.  Other courts adopt a middle ground and hold that a party cannot rebut the testimony of its Rule 30(b)(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal.

Coalition v. McCamman, 725 F.Supp.2d 1162, 1172 (E.D.Cal.2010), citations omitted. The Ninth Circuit has not yet ruled on this issue. Though the opinion in Coalition formally states "It is not necessary to resolve the competing lines of authority on the binding effect of testimony ..." the court appears to prescribe the third position for future developments in the case, advising that "The Gingras [Rule 30(b)(6)] testimony may be amplified or explained, so long as a material change or retraction is not made without a reasonable basis." Coalition v. McCamman, 725 F.Supp.2d 1162, 1173 (E.D.Cal.2010). This court similarly adopts the third position, that Rule 30(b)(6) testimony can only be rebutted when there is an explanation for why the earlier testimony is mistaken. In finding a deposition notice improper, an Eastern District opinion explained the importance of this procedure: "Rule 30(b)(6) is a powerful and important discovery tool.  A Rule 30(b)(6) deposition notice serves a unique function: it is the sworn corporate admission that is binding on the corporation." Hardin v. Wal–Mart Stores, Inc., 2011 WL 11563217, *2 (E.D.Cal. Dec.2, 2011). To effectuate the purpose of Rule 30(b)(6), the weight of the resulting testimony is not to be lightly disregarded. As one court explained, "Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition." Rainey v. American Forest & Paper Ass'n, 26 F.Supp.2d 82, 94 (D.D.C.1998). "[C]ourts have allowed a contradictory or inconsistent affidavit to nonetheless be admitted if it is accompanied by a reasonable explanation. Stanley argues that the contradiction is understandable or reasonable because Hreha's analysis is more extensive.  This type of explanation is unacceptable and ignores Stanley's duties under Rule 30(b)(6). Stanley has not alleged that it did not have access to material facts prior to the 30(b)(6) corporate deposition, that the expert report was based on newly discovered evidence, or that Powell [person most knowledgeable] was somehow confused or made an honest mistake." Hyde v. Stanley Tools, 107 F.Supp.2d 992, 993 (E.D.La.2000).

In the summary judgment context, the Ninth Circuit rule is that a party can not create a dispute of facts by submitting an affidavit which contradicts earlier deposition testimony. Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir.1991). The purpose of the rule is to prevent a party who has been deposed from presenting an issue of fact during summary judgement by simply submitting an affidavit contradicting prior testimony. Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir.2012).

The Court agrees with this analysis.

One of County's designees, Kathy Lemon, answered a series of questions as to the actions of an unnamed body, the disciplinary review board and "the County." Plaintiff's counsel asked,



[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted][5]

[5]Given that Lemon was a member of the disciplinary review board (Doc. 59 at 42), the implication is that her testimony, at least in part, related to her own personal knowledge despite that she was designated under Rule 30(b)(6) to testify for the County of Kern.

Q. Do you know why he hasn't been terminated?

A. I don't believe the Skelly process has occurred yet, the Skelly hearing.

Q. I think you mentioned earlier you don't know when that is scheduled to take place, if it's scheduled to take place?

A. There's been a delay, I believe.

Q. Do you know why there's been a delay?

A. I believe there was a records matter before the juvenile court that has to be determined.

Q. In other words, ███████ ███████ attorney has requested some documents from the juvenile court and his position is that the Skelly process can't continue until he obtains those documents; correct?

MR. WEAKLEY: Objection. Speculation.

BY MR. SEABAUGH:

Q. If you know.

A. Yes, I know that. That's true.

A. Can you say that again, please.

Q. Let me ask it this way. So with -- you have Exhibit 2 in front of you?

A. Yes.

15



[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

MS. RIVERA: Objection. Vague. Calls for speculation. Calls for expert opinion.

MR. SEABAUGH: I'll withdraw the question.

(Doc. 59-1 at 50-55)  The questioner made no attempt to clarify which of these determinations were binding on the entity until the last question.  The Court finds this last question to be significant in that it demonstrates the plaintiff was not relying upon the testimony as evidence that the County of Kern—as opposed to a department or board of the County of Kern—had made a final determination or, indeed, any determination at all.[6]  To the contrary, the questions demonstrate that the plaintiff *understood* that the County of Kern *had not* made this determination.[7]

As noted above, Lemon explained that, though ████████ has been provided the Skelly notice, the hearing has not yet occurred.  According to <u>Skelly v. State Personnel Bd.</u>, 15 Cal. 3d 194, 206 (1975), when a public employee faces a potential deprivation of his job—a vested property interest—he is entitled to due process which includes notice of the proposed discipline and the reasons for the proposed discipline, a copy of the charges and the materials upon which the proposed action is based and the right to respond either orally or in writing.  Generally, the Skelly hearing is an informal meeting and not a full evidentiary hearing, though the employee may be represented by counsel. <u>Id</u>. at 215.  By definition, the failure of the County of Kern to conduct the Skelly hearing means that the County of Kern has not yet made a legally enforceable final determination as to whether ████ has committed the acts of misconduct.  Despite this unassailable legal principle, the plaintiff persists in asserting that she is entitled to summary adjudication on this topic.  In doing so, she ignores the evidence of the genuine dispute of material fact.

For example, ████████ testimony was similar to Ms. Lemons.  The plaintiff's attorney asked ████ , 

███████████████████████████████████████████████████████████████████

████████████████████████████████████

---

[6] At the hearing, plaintiff's counsel referred to a portion of Lemon's testimony in which she indicated that the ████████████████ would be "the final policymaker or person with final policymaking authority with respect to whether his conduct was within or not within policy." (Lemon Depo at p. 20-21) This appears to be a misstatement of law but, in any event, the question related to ████████████ employment determination and not to ████ ████ situation.  No similar question was asked related to ██ ██████████ employment determination.

[7] Indeed, at the hearing, counsel admitted that the County of Kern denied having a sufficient factual basis to admit or deny a request for admission directed at discovering whether the County of Kern contended ████ committed the wrongful conduct.  This failure to admit or deny, however, may have consequences that may preclude the County of Kern from taking the position at trial that the wrongful acts did or did not occur.











[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

(Doc. 59 at 83-95, emphasis added)

At most, this testimony makes clear that, preliminarily, [redacted] *has* committed acts of misconduct but the County of Kern cannot commit to this preliminary determination until it completes the Skelly process. In fact, the whole point to the Skelly process is that before a final determination is made by the entity, the employee must be afforded the opportunity to counter the claims. For the process to be consistent with due process, the County of Kern

*cannot* have made a final determination until after that hearing because it has not yet been provided all of the evidence—namely, that from ████████—upon which its final decision will be made.

Lemon's declaration, filed with the entity's opposition, explains in greater detail the Skelly process and clarifies further that she could not have bound the County of Kern to a position on this topic because the process has not been completed. (Doc. 68) This declaration—to which there was no objection—does not create a material fact by contradicting deposition testimony; it simply explains her testimony given at the deposition. Consistent with <u>Coalition v. McCamman</u>, 725 F.Supp.2d 1162, 1172 (E.D.Cal.2010) and <u>Munoz</u>, this declaration and the deposition responses of Romans creates a genuine, triable issue of material fact as to whether ██████ committed the acts.

<div align="center"><b>ORDER</b></div>

Based upon the foregoing, the Court **ORDERS**:

1. The plaintiff's motion for summary adjudication related to whether defendant ████ acted within the course and scope of his employment at all times relevant to the complaint is **GRANTED**;

2. The plaintiff's motion for summary adjudication related to whether the Court of Kern has admitted that defendant ██████ committed the wrongful acts is **DENIED**.


IT IS SO ORDERED.

Dated:   **April 18, 2017**                    **/s/ Jennifer L. Thurston**
                                          UNITED STATES MAGISTRATE JUDGE